UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

In re:                                                    Case No.: 12-25157-BKC-AJC

JESUS FERNANDEZ,                                          Chapter 7

      Debtor.
_____/

BRANCH BANKING & TRUST COMPANY                            Adv. No. _____

      Plaintiff.
v.

JESUS FERNANDEZ

      Defendant.
_____/

**BRANCH BANKING & TRUST COMPANY'S COMPLAINT OBJECTING TO THE DISCHARGEABILITY OF CERTAIN DEBT PURSUANT TO 11 U.S.C. § 523 AND COMPLAINT OBJECTING TO DEBTOR'S, JESUS FERNANDEZ, DISCHARGE PURSUANT TO 11 U.S.C. § 727**

COMES NOW, Plaintiff, BRANCH BANKING AND TRUST COMPANY, a North Carolina banking corporation, as successor in interest to Colonial Bank f/k/a Colonial Bank N.A., a national banking association, by asset acquisition from the FDIC in its capacity as receiver for Colonial Bank ("BB&T"), by and through undersigned counsel, and sues Defendant/Debtor, Jesus Fernandez ("Debtor"), and in support alleges:

**I.   PARTIES AND JURISDICTION**

1.    This Court has jurisdiction of this core proceeding under 28 U.S.C. §§157(b)(2)(I) and (J).

2.    This is an action objecting to the dischargeability of certain debt against the Debtor pursuant to 11 U.S.C. §§ 523(a)(2)(A), 523(a)(2)(B), and 523(a)(6), or alternatively, objecting the Debtor's discharge pursuant to 11 U.S.C. § 727(a)(6)(A).

3. Jesus Fernandez is the debtor is this case ("Debtor," as previously defined), resides in Miami Dade County, Florida and is *sui juris*.

4. Plaintiff, BB&T is a corporation, is a North Carolina banking corporation authorized to do business in the state of Florida and doing business in Miami-Dade County, Florida.

## II.     GENERAL ALLEGATIONS

*I.     DEBTOR'S BANKING TRANSACTIONS & WRONGFUL CONDUCT*

*Mellon Transaction*

1. On April 16, 2008, Fernandez executed and delivered a promissory note in the amount of $800,000.00 (the "Mellon Note") to Mellon Trust of New England, N.A. ("Mellon").

2. A true and correct copy of the Mellon Note is incorporated by reference herein and attached hereto as Exhibit "1."

3. On April 16, 2008, Fernandez executed and delivered a mortgage (the "Mellon Mortgage") securing payment of the Mellon Note to Mellon.

4. The Mellon Mortgage was recorded on April 24, 2008 in Official Records Book 26343, Page 4158 of the Public Records of Miami-Dade County, Florida.

5. A true and correct copy of the Mellon Mortgage is incorporated by reference herein and attached hereto as Exhibit "2."

6. The collateral subject of the Mellon Mortgage is that certain real property located at 11385 NW 66 Street, Doral, Florida 33178, in Miami-Dade County, Florida, and legally described as:

> LOT 28A, IN BLOCK 1, OF DORAL ISLES RIVIERA AMENDED, ACCORDING TO THE PLAT THEREOF, AS RECORDED IN PLAT BOOK 150, AT PAGE 37 OF THE PUBLIC RECORDS OF MIAMI-DADE COUNTY, FLORIDA

(hereinafter referred to as the "Property").

*BB&T Transaction*

7. On April 17, 2008, Fernandez executed and delivered to BB&T's predecessor in interest, Colonial Bank, an Adjustable Rate Promissory Note in the original principal amount of $719,550.00 (the "BB&T Note").

8. A true and correct copy of the BB&T Note is incorporated by reference herein and attached hereto and incorporated herein as Exhibit "3."

9. Concurrently with the execution of the BB&T Note, Fernandez executed and delivered to Mortgage Electronic Registration Systems, Inc., solely as a nominee for BB&T's predecessor in interest, Colonial Bank, a mortgage securing the payment of the BB&T Note (the "BB&T Mortgage").

10. The BB&T Mortgage was filed for record on May 7, 2008, in the Official Records of Miami-Dade County in Book 26367 at Page 0487.

11. A true and correct copy of the BB&T Mortgage, and related riders, is attached hereto and incorporated herein as Exhibit "4."

12. BB&T is the owner and holder of the BB&T Note, BB&T Mortgage, and all other related loan documents (the "BB&T Loan") pursuant to that certain Purchase and Assumption Agreement dated August 14, 2009, between BB&T and the FDIC, as receiver for Colonial Bank (the "Purchase and Assumption Agreement"), which agreement evidences the assignment of the loan to BB&T, a copy of which is not attached hereto because of its voluminous nature but can be found on the FDIC's website at: http://fdic.gov/bank/individual/failed/colonial-al_P_and_A.pdf.

13. The BB&T Note, BB&T Mortgage, Purchase and Assumption Agreement and related loan documents, except for the Closing Affidavit and Loan Application which are defined hereinbelow, shall collectively be referred hereinafter as the "BB&T Loan Documents."

14. Debtor executed the BB&T Mortgage **the day after** the Mellon Mortgage, and prior to the Mellon Mortgage having been recorded in the Public Records of Miami-Dade County, Florida.

15. BB&T had no knowledge, actual or constructive, of the Mellon Mortgage at the time the BB&T Mortgage was executed.

16. Debtor purposely failed to disclose to BBT the Mellon transaction, which resulted in the debt to Mellon for the same collateral Property.

### III. THE FORECLOSURE AND BANKRUPTCY PROCEEDINGS AND THE DEBTOR'S WRONGFUL CONDUCT

17. On May 10, 2010, Creditor instituted its Foreclosure Proceeding, Case Number 10-27254 CA 24, which was subsequently consolidated with that certain foreclosure proceeding instituted by MELLON TRUST OF NEW ENGLAND, N.A. n/k/a BNY MELLON, N.A, 10-22621 CA 24, pending in the Circuit Court of the Eleventh Judicial in and for Miami Dade County.

18. BB&T filed a proof of claim in this case, Claim 17-1, for the deficiency amount that will result after foreclosure and sale of the Property.

19. On October 11, 2012, BB&T served its first notice of examination of the Debtor pursuant to Federal Rule of Bankruptcy Procedure 2004 setting the examination on November 27, 2012; however, Debtor failed to appear.

20. On January 31, 2013, Debtor obtained an order from this Court ("Court's Order Compelling Debtor") [D.E. #146], a copy of which is attached hereto as Exhibit "5" compelling

Debtor to appear at his examination pursuant to Federal Rule of Bankruptcy Procedure 2004 set by BB&T on February 19, 2013, [D.E. #141], a copy of the notice is attached hereto as Exhibit "6"; however, Debtor failed to appear despite the Court's Order Compelling Debtor.

21.    BB&T obtained a certificate of non-appearance for the Debtor's failure to appear at the 2004 examination set for February 19, 2013, incorporated by reference herein and attached hereto as Exhibit "7."

22.    Debtor failed to adhere to the Court's Order Compelling Debtor by failing to appear at the 2004 examination.

### IV.    OBJECTIONS TO DISCHARGEABILITY OF THE DEBT OWED TO BB&T OR ALTERNATIVELY TO THE DEBTOR'S DISCHARGE

### COUNT I
### Objection to Dischargeability of the Debt
### [11 U.S.C. § 523(a)(2)(A)]

23.    BB&T incorporates by reference and realleges paragraphs 1 through 22 of this Complaint as if fully set forth herein.

24.    Pursuant to 11 U.S.C. § 523(a)(2)(A), a discharge under section 727 does not discharge an individual debtor from any debt for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition.

25.    The Debtor is an "individual debtor."

26.    The subject debt arising out of the BBT Loan Documents constitutes a "debt for money."

27.    The Debtor obtained the debt for money by way of the BBT Loan Documents from BB&T by false pretenses, false representations, or actual fraud.

28. Specifically, the Debtor falsely pretended to, falsely represented to, or actually defrauded BB&T by applying for the real estate loan and obtaining said loan for the purchase of the Property pursuant to the BB&T Loan Documents while knowing that Debtor had executed the Mellon Note and Mortgage in Mellon's favor secured by the same collateral Property.

29. Specifically, the Debtor falsely pretended to, falsely represented to, or actually defrauded BB&T by failing to disclose to BB&T that he had executed the Mellon Note and the Mellon Mortgage the day prior to executing the BB&T Loan Documents that concerned the Property.

30. Specifically, the Debtor falsely pretended to, falsely represented to, or actually defrauded BB&T by executing the BB&T Loan Documents after having executed the Mellon Note and Mellon Mortgage.

31. Specifically, the Debtor falsely pretended to, falsely represented to, or actually defrauded BB&T by inducing BB&T to lend Debtor money to purchase the Property.

32. Specifically, the Debtor falsely pretended to, falsely represented to, or actually defrauded BB&T by entering into the agreements pursuant to the BB&T Loan Documents while having obtained a loan from Mellon pursuant to the Mellon Note the day prior to executing the BB&T Loan Documents.

33. Specifically, the Debtor falsely pretended to, falsely represented to, or actually defrauded BB&T by accepting the proceeds from BB&T pursuant to the BB&T Loan Documents while also accepting the proceeds from Mellon the day prior pursuant to the Mellon Note and Mellon Mortgage.

34. Specifically, the Debtor falsely pretended to, falsely represented to, or actually defrauded BB&T by executing the BB&T Mortgage and representing that the Property was unencumbered.

35.     The aforementioned false representations, false pretenses, or actual fraudulent acts do not concern a statement respecting to Debtor's own financial condition.

36.     BB&T reasonably relied upon the Debtor's false representations, false pretenses, or actual fraudulent acts in making the loan to Debtor for the purchase of the Property pursuant to the BB&T Loan Documents.

37.     Had BB&T known that Debtor was simultaneously obtaining a real estate loan from Mellon secured by a mortgage of the same Property, it would have never lent the Debtor money or entered into BB&T Loan Documents.

38.     BB&T has incurred damages as a result of the Debtor's wrongful conduct as alleged herein, and has incurred attorneys' fees and costs associated therewith including the litigation of the foreclosure action and the Debtor's bankruptcy proceeding.

39.     Accordingly, the monetary debt owed to BB&T is not dischargeable pursuant to 11 U.S.C. § 523(a)(2)(A).

WHEREFORE, BB&T pleads that the Court enter a judgment against the Debtor granting BB&T's objection pursuant to § 523(a)(2)(A) and denying the dischargeability of the debt owed to BB&T, plus an award for damages, post-judgment interest, attorneys' fees and costs, and any such other relief as this Court deems just and proper.

## COUNT II
### Objection to Dischargeability of the Debt
### [11 U.S.C. § 523(a)(2)(B)]

40.     BB&T incorporates by reference and realleges paragraphs 1 through 22 of this Complaint as if fully set forth herein.

41.     Pursuant to 11 U.S.C. § 523(a)(2)(B), a discharge under section 727 does not discharge an individual debtor from any debt for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by use of a statement in writing that is

materially false, respecting the debtor's or an insider's financial condition, on which the creditor to whom the debtor is liable for such money reasonably relied, and that the debtor caused to be made or published with the intent to deceive.

42. The Debtor is an "individual debtor."

43. The subject debt arising out of the BB&T Loan Documents constitutes a "debt for money."

44. The Debtor obtained the subject debt owed by Debtor under the BB&T Loan Documents by use of a statements in writing that were materially false.

45. Specifically, the Debtor obtained the subject debt owed by Debtor under the BB&T Loan Documents by use the Loan Closing Affidavit ("Closing Affidavit"), dated April 17, 2008, executed and initialed by Debtor, incorporated by reference herein and attached hereto as Exhibit "8."

46. The Closing Affidavit is materially false because Debtor falsely represented to BB&T that Debtor's "debts are currently equal to or less that they were at the time of the loan application" because the Debtor had become indebted to Mellon for $800,000.00 under the Mellon Note and Mellon Mortgage over the same Property on the day prior to executing the Closing Affidavit. (Closing Affidavit at ¶ 1). The Debtor's loan application ("Loan Application") is incorporated by reference herein and attached hereto as Exhibit "9."

47. The Closing Affidavit is materially false because Debtor falsely represented to BB&T that Debtor was "not currently obligated and do not intend to become obligated, in the near future, for any debts related to the Property which were not disclosed to the Lender during the application process" because the Debtor had in fact become currently obligated for the $800,000.00 debt under the Mellon Note and Mellon Mortgage over the same Property on the day prior to executing the Closing Affidavit. (Closing Affidavit at ¶ 1).

48. The Closing Affidavit is materially false because Debtor falsely represented to BB&T that Debtor's "information regarding income, other assets and debts" on the loan application were "correct and complete" "because the Debtor had in fact purchased the Property and was a new yet undisclosed asset, and had become currently obligated for the $800,000.00 debt under the Mellon Note and Mellon Mortgage over the same Property on the day prior to executing the Closing Affidavit. (Closing Affidavit at ¶ 2).

49. The Closing Affidavit is materially false because Debtor falsely represented that the mortgage loan being applied for was for the purchase of the Property as the primary residence, despite that Debtor had already borrowed funds from Mellon through the Mellon transaction for same.

50. The Closing Affidavit was with respect the Debtor's financial condition.

51. BB&T reasonably relied upon the Closing Affidavit.

52. The Debtor caused the Closing Affidavit to be made or published with the intent to deceive BB&T.

53. The Debtor benefited from the double loan proceeds, i.e., $800,000.00 from the Mellon Note and transaction, and the $719,550.00 from the BB&T Note, for the purchase of the same Property, and there was a financial gain to Debtor.

54. BB&T has incurred damages as a result of the Closing Affidavit provided by Debtor, and has incurred attorneys' fees and costs associated therewith including the litigation of the foreclosure action and the Debtor's bankruptcy proceeding.

55. Accordingly, the monetary debt owed to BB&T is not dischargeable pursuant to 11 U.S.C. § 523(a)(2)(B).

WHEREFORE, BB&T pleads that the Court enter a judgment against the Debtor granting BB&T's objection pursuant to 11 U.S.C. § 523(a)(2)(B), and denying the

dischargeability of the debt owed to BB&T, plus an award for damages, post-judgment interest, attorneys' fees and costs, and any such other relief as this Court deems just and proper.

### COUNT III
### Objection to Dischargeability of the Debt
### [11 U.S.C. § 523(a)(6)]

56. BB&T incorporates by reference and realleges paragraphs 1 through 22 of this Complaint as if fully set forth herein.

57. Pursuant to 11 U.S.C. § 523(a)(6), a discharge under section 727 of this title does not discharge an individual debtor from any debt for willful and malicious injury by the debtor to another entity or the property of another entity.

58. The Debtor is an "individual debtor."

59. The Debtor maliciously and willfully injured BB&T, BB&T's real estate collateral, i.e., the Property, and the proceeds from the BB&T Loan by applying for the real estate loan and obtaining said loan for the purchase of the Property pursuant to the BB&T Loan Documents while knowing that Debtor had executed the Mellon Note and Mortgage in Mellon's favor secured by the same collateral Property.

60. The Debtor maliciously and willfully injured BB&T, BB&T's real estate collateral, i.e., the Property, and the proceeds from the BB&T Loan by failing to disclose to BB&T that he had executed the Mellon Note and the Mellon Mortgage the day prior to executing the BB&T Loan Documents.

61. The Debtor maliciously and willfully injured BB&T, BB&T's real estate collateral, i.e., the Property, and the proceeds from the BB&T Loan by executing the BB&T Loan Documents after having executed the Mellon Note and Mellon Mortgage.

62. The Debtor maliciously and willfully injured BB&T, BB&T's real estate collateral, i.e., the Property, and the proceeds from the BB&T Loan by executing the Mellon Mortgage also intended to be a first mortgage on the Property.

63. The Debtor maliciously and willfully injured BB&T, BB&T's real estate collateral, i.e., the Property, and the proceeds from the BB&T Loan by inducing BB&T to lend Debtor money to purchase the Property and enter into the agreements pursuant to the BB&T Loan Documents while having obtained a loan from Mellon pursuant to the Mellon Note the day prior to executing the BB&T Loan Documents.

64. The Debtor maliciously and willfully injured BB&T, BB&T's real estate collateral, i.e., the Property, and the proceeds from the BB&T Loan by accepting the proceeds from BB&T pursuant to the BB&T Loan Documents while also accepting the proceeds from Mellon the day prior pursuant to the Mellon Note and Mellon Mortgage.

65. Further, the Debtor maliciously and willfully injured BB&T, BB&T's real estate collateral, i.e., the Property, and the proceeds from the BB&T Loan by inducing it to make the subject loan to Debtor, which benefited the Debtor, by executing and providing the Loan Closing Affidavit ("Closing Affidavit") as previously defined), which was materially false.

66. In the Closing Affidavit, Debtor falsely represented to BB&T that Debtor's "debts are currently equal to or less that they were at the time of the loan application" because the Debtor had become indebted to Mellon for $800,000.00 under the Mellon Note and Mellon Mortgage over the same Property on the day prior to executing the Closing Affidavit. The Debtor's Loan Application is incorporated by reference herein and attached hereto as Exhibit "8." (Closing Affidavit at ¶ 1).

67. In the Closing Affidavit, Debtor falsely represented to BB&T that Debtor was "not currently obligated and do not intend to become obligated, in the near future, for any debts

related to the Property which were not disclosed to the Lender during the application process" because the Debtor had in fact become currently obligated for the $800,000.00 debt under the Mellon Note and Mellon Mortgage over the same Property on the day prior to executing the Closing Affidavit. (Closing Affidavit at ¶ 1).

68. In the Closing Affidavit, Debtor falsely represented to BB&T that Debtor's "information regarding income, other assets and debts" on the loan application were "correct and complete" "because the Debtor had in fact purchased the Property and was a new yet undisclosed asset, and had become currently obligated for the $800,000.00 debt under the Mellon Note and Mellon Mortgage over the same Property on the day prior to executing the Closing Affidavit. (Closing Affidavit at ¶ 2).

69. In the BB&T Mortgage, Debtor falsely represented that the Property was unencumbered.

70. BB&T relied on the Debtor's false representations in the Closing Affidavit, and BB&T Mortgage.

71. BB&T has incurred damages as a result, including dissipation of the BB&T Loan proceeds upon information and belief, and encumbering BB&T's real estate collateral by executing recording the Mellon Mortgage.

72. BB&T has incurred attorneys' fees and costs associated therewith including the litigation of the foreclosure action and the Debtor's bankruptcy proceeding.

73. Accordingly, the debt is not dischargeable pursuant to 11 U.S.C. § 523(a)(6).

WHEREFORE, BB&T pleads that the Court enter a judgment against the Debtor granting BB&T's objection pursuant to 11 U.S.C. § 523(a)(6), and denying the dischargeability of the debt owed to BB&T, plus an award for damages, post-judgment interest, attorneys' fees and costs, and any such other relief as this Court deems just and proper.

## COUNT IV
## Objection to Debtor's Discharge
## [11 U.S.C. § 727(6)(a)(A)]

74. BB&T incorporates by reference and realleges paragraphs 1 through 22 of this Complaint as if fully set forth herein.

75. Pursuant to 11 U.S.C. § 727(a)(6)(A), the court shall grant the debtor a discharge, unless the debtor has refused in the case to obey any lawful order of the court, other than an order to respond to a material question or to testify.

76. The debtor has refused in this case to obey this Court's Order Compelling Debtor by failing to appear at the 2004 examination on February 19, 2013.

77. BB&T obtained a certificate of non-appearance for the Debtor's failure to appear at the 2004 examination set for February 19, 2013.

78. BB&T has incurred attorneys' fees and costs as a result of failing to appear at the 2004 examination and comply with this Court's Order Compelling Debtor, as well as for litigating the foreclosure action and in the Debtor's bankruptcy proceeding.

79. Accordingly, the Debtor's discharge should be denied pursuant to 11 U.S.C. § 727(a)(6)(A).

WHEREFORE, BB&T pleads that the Court enter a judgment against the Debtor granting BB&T's objection pursuant to 11 U.S.C. § 727(a)(6)(A), and denying the Debtor's discharge, plus an award for damages, post-judgment interest, attorneys' fees and costs, and any such other relief as this Court deems just and proper.

## V.    RELIEF REQUESTED

WHEREFORE, based on the above allegations, BB&T respectfully demands that the Court enter a judgment (i) against the Debtor for damages, post-judgment interest, attorneys' fees and costs; (ii) denying the dischargeability of the debt owed to BB&T or (iii) alternatively,

denying the Debtor's discharge; and (iv) granting BB&T such other relief as this Court deems just and proper.

Date: April 30, 2013

Respectfully submitted,
GRAYROBINSON, PA
1221 BRICKELL AVENUE, SUITE 1600
Miami, Florida 33131
Tel:  305-416-6880
Fax: 305-416-6887

By:  /s/ Leyza F. Blanco
     Leyza F. Blanco
     Fla. Bar. No.: 104639
     Ileana E. Christianson
     Fla. Bar. No.: 673366